# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 7, 2010

Lyle W. Cayce
Clerk

No. 09-10112

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WILMIRE U. JONES, III,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:08-CR-00013-C-BG-2

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

Appellant Wilmire U. Jones, III, pled guilty to fraud in connection with access devices and aiding and abetting an operation that used identification and credit information of others to open store charge accounts. *See* 18 U.S.C. §§ 1029(a)(2) and 2. Jones contends that the district court erred in the calculation of the loss amount for sentencing purposes. We disagree and affirm.

Jones was part of an organization operating in Houston, Texas that used fraudulent drivers licenses and identifying information to open charge or credit

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-10112

accounts at various stores. Jones and Michael David Fautt, another member of the organization, traveled to different cities in a vehicle provided by the organization. Jones and Fautt used false identities to open accounts at stores, made small purchases at stores, and then purchased gift cards up to the credit limit on the accounts. Fautt, who entered the stores to open the accounts, was paid $3,000 per trip. Jones, who drove the vehicle and was aware of the unlawful purpose of the trips, was paid $500 per trip.

In October and November of 2007, Jones and Fautt traveled twice to New Orleans, Louisiana, twice to Oklahoma City, Oklahoma, and once to Lubbock, Texas. In Lubbock, Jones and Fautt used the stolen identification and credit information to charge over $23,000 at various stores.

After he was caught, Jones pled guilty pursuant to a written plea agreement. The Presentence Report ("PSR") assigned Jones a base offense level of six. *See* U.S.S.G. §§ 2B1.1(a)-(b)(1)(E). The probation officer calculated the intended loss amount by extrapolating the actual loss inflicted during the Lubbock trip to three additional trips.[1] The actual losses from the additional trips are unknown. The calculation resulted in an intended loss amount of about $92,000. Jones's base offense level was increased by eight levels because the amount of loss exceeded $70,000. At sentencing, as on appeal, Jones objected to this loss calculation, arguing that no evidence supported a finding that the Lubbock loss amount was representative of the loss amounts from other trips. The district court overruled the objection and sentenced Jones to 41 months of imprisonment.

---

[1] Jones admitted to being involved in four trips in addition to the Lubbock trip. However, the PSR only holds Jones responsible for a total of four trips, including the Lubbock trip.

No. 09-10112

We review for clear error the trial court's findings of fact concerning a guidelines sentence. *United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008). A determination of the loss amount is a factual finding. *United States v. John*, 597 F.3d 263, 279 (5th Cir. 2010). Under this standard, " 'as long as the determination is plausible in light of the record as a whole, clear error does not exist.' " *Id.* (quoting *United States v. Ismoila*, 100 F.3d 380, 396 (5th Cir.1996)). Further, in determining the amount of loss, "[t]he court need only make a reasonable estimate." U.S.S.G. § 2B1.1 cmt. n. 3(C). The district courts have a "wide latitude" in this regard. *John*, 597 F.3d at 279. "The method used to calculate the amount of loss, however, must bear some reasonable relation to the actual or intended harm of the offense." *Id.* (citation omitted).

Relevant to this case, the guidelines suggest several different factors courts may consider when estimating loss, including the "approximate number of victims multiplied by the average loss to each victim," and the "scope and duration of the offense and revenues generated by similar operations." § 2B1.1 cmt. n. 3(C). The PSR's extrapolation of the actual loss from the Lubbock trip to each of the three other trips in which Jones participated was based on these principles.

Jones argues that because there was no evidence as to how many false identities were used on the other trips, or how many charges were made, the amount of loss should be limited to the actual loss from the Lubbock trip. Jones also argued that extrapolating the total amount of loss from one trip as the average was unreasonable. On the facts of this case, the district court's estimate of the amount of loss was reasonable and the district court did not clearly err in using the PSR's estimate of loss.

3

No. 09-10112

Jones admitted to completing these trips with Fautt. He also admitted that he and Fautt charged up to the full limit of the accounts they opened. They were found with identification documents and credit cards not in their names. The regularity of their trips establishes a pattern. Each time, Jones and Fautt used a car provided by the organization and were paid generously for their work, suggesting that the organization reaped considerable reward from their activities. Moreover, although Jones admitted to taking four trips in addition to the Lubbock trip, the PSR only held him accountable for one loss, so it is likely that the PSR's estimate is conservative. Given these circumstances, it would be unreasonable to limit the amount of loss to the actual loss from the Lubbock trip alone. The district court's loss calculation was not clearly erroneous.

For the foregoing reasons, the sentence is

**AFFIRMED.**